```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

```
JASON DEAL and ROBERT LAHR,
```
                              Plaintiffs,           07-CV-6497

              v.                                **DECISION
                                                 and ORDER**
```
SENECA COUNTY, a municipal corporation,
the SENECA COUNTY SHERIFF'S DEPARTMENT,
LEO T. CONNOLLY, Individually and in
his official capacity as SENECA COUNTY
SHERIFF, the SENECA COUNTY DISTRICT
ATTORNEYS OFFICE, RICHARD SWINEHART,
Individually and in his official capacity
as SENECA COUNTY DISTRICT ATTORNEY, JAMES
LARSON, Individually and in his Capacity
as Undersheriff of Seneca County,
```
                              Defendants.
___

## INTRODUCTION

Plaintiffs Jason Deal ("Deal") and Robert Lahr ("Lahr") (collectively "plaintiffs") bring this action against defendants Seneca County, the Seneca County Sheriff's Department ("Sheriff's Department"), Leo T. Connolly, Individually and in his official capacity as Seneca County Sheriff ("Connolly"), the Seneca County District Attorney's Office ("SCDA"), Richard Swinehart, Individually and in his official capacity as Seneca County District Attorney ("Swinehart"), and James Larson, Individually and in his capacity as Undersheriff of Seneca County ("Larson") pursuant to 42 U.S.C. § 1983 claiming that the defendants violated their rights under the Fourth Amendment, the Fourteenth Amendment Due Process Clause (procedural and substantive), and the Equal Protection Clause of the United States Constitution. Plaintiffs allege that Connolly, Larson and

Swinehart used their offices including the whole weight of their departments to conduct a campaign of harassment and intimidation against the plaintiffs with the goal of causing them bodily harm and attempting to force them to resign from their jobs. According to plaintiffs, the reason for this campaign had nothing to do with any civil or criminal misconduct by either Deal or Lahr. Plaintiffs claim that the three individual defendants used all the force of the SCDA's Office and the Sheriff's Department to harass and intimidate the plaintiffs in an effort to prevent plaintiffs from continuing their criminal investigation, to try to prevent the plaintiffs from testifying, and in an attempt to discredit the plaintiffs so that their testimony would not be credible.

Defendants, Seneca County, the Sheriff's Department and Larson move to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on grounds that the plaintiffs have failed to state a cause of action upon which relief can be granted. Specifically, the defendants contend that plaintiffs are unable to establish violations of their substantive or procedural due process rights under the fourteenth amendment, violations of their equal protection rights, and violations of their fourth amendment rights. Defendant Larson further contends that he is entitled to qualified immunity and that plaintiffs have failed to state a claim of intentional infliction of emotional distress. For the reasons set forth below, I grant in part and deny in part the defendants' motions to dismiss.

## BACKGROUND

Plaintiffs Deal and Lahr are employed as criminal investigators for the Sheriff's Department. See Complaint, ¶¶ 2,5,6. It is alleged that in the mid-1990s, Lahr investigated a Seneca County vendor, Preferred Auto, to determine whether that vendor was over billing Seneca County for automobile repair services. See id., ¶¶ 12,13. In addition, plaintiffs claim that the owner of Preferred Auto was a close friend of Undersheriff Larson and the former Sheriff, Tom Fox who threatened to fire Lahr and told him to stop investigating Preferred Auto. See id., ¶¶ 14, 17. Moreover, plaintiffs allege that Larson moved all of the evidence regarding Preferred Auto to a warehouse owned by the Seneca County Industrial Development Agency which, two weeks later in February 2005, burned down under suspicious circumstances. See id., ¶¶ 19-21. Plaintiffs further aver that in December 2005, they investigated Larson, Deputy Sheriff Josh Zona ("Zona") and other deputy sheriffs relating to alleged thefts of property from the Sheriff's Department. See id., ¶¶ 22-23. In addition, plaintiffs allege that Connolly ordered them not to interview Larson and Zona as well as ordered them not to make arrests. See id., ¶¶ 24-25. After the warehouse fire incident, plaintiffs claim that they turned over their investigative files to the New York State Police. See id., ¶¶ 26-28.

Plaintiffs claim that the three individual defendants have actively campaigned to harass and discredit them in order to "get them fired or force them off their jobs as criminal investigators for

the ... Sheriff's Department." See id., ¶¶ 31-32. Specifically, plaintiffs allege that the campaign of harassment conducted by Connolly, Larson and Swinehart including the Sheriff's Department and the SCDA's Office consisted of the following: conducting surveillance or spying on plaintiffs and their families; being hypercritical and subjecting plaintiffs to unusual scrutiny at work; applying stricter standards to plaintiffs' performance compared to other investigators; denying and attempting to deny plaintiffs' overtime opportunities; giving plaintiffs unfavorable work assignments and ostracizing them; attempting to have plaintiffs disciplined and/or discharged; using the SCDA's Office to file false criminal charges against plaintiffs; trying to destroy plaintiffs' reputations; and engaging in other activities in order to get plaintiffs fired from their positions or make their lives both at work and at home so miserable that they would be forced to resign. See id., ¶ 32.

## DISCUSSION

### I. Defendants' Motions to Dismiss

In considering a motion for dismissal under Rule 12, defendant must show that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. See H.J. Inc. v. Northwest Bell Telephone Co., 492 U.S. 229, 249 (1989); see also 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][a] (Matthew Bender 3d ed.) A complaint may be dismissed pursuant to Rule 12(b)(6) where the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1974

(2007). As the Second Circuit has recently stated, Twombly requires that a plaintiff satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." See Iqbal v. Hasty, 2007 WL 1717803 at *11 (2d Cir.2007).

In order to state a claim, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." See Twombly, 127 S.Ct. at 1965. Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." See id. at 1974. "A court should only dismiss a suit under Rule 12(b)(6) if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."' See Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir.1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994) (citations omitted).

## II. Plaintiffs' Civil Rights Claims

Plaintiffs allege that their rights to procedural due process, substantive due process, to equal protection and their fourth amendment rights against illegal search and seizure were violated as a result of the defendants' actions. For the reasons set forth below, I find that the plaintiffs have not been denied any procedural or substantive due process rights. Nor has the fourth amendment been

implicated when considering the allegations of the Complaint. However, as of this stage in the lawsuit, the Court finds that plaintiffs have alleged sufficient facts to support their equal protection claim which is not dismissed.

### A.   Procedural Due Process

Plaintiffs contend that their right to procedural due process was violated when defendants carried out a systematic campaign of harassment against them to force them to resign from their employment in which they have a protected property interest. See Complaint, ¶¶ 42-44. Defendants have moved to dismiss plaintiffs' procedural due process claim arguing that plaintiffs' allegations that they suffered "systematic harassment" and that defendants attempted to "force them out of their jobs" does not implicate a property interest under the Due Process Clause. See Senenca County Defs. Br. at 5. Plaintiffs respond by identifying several acts they allege defendants have done and the fact that plaintiffs have been able to avoid being fired should not deprive them of their right to seek injunctive relief directing defendants to stop continuing threats and harassment. See Pls. Br. at 8.

The Fourteenth Amendment to the United States Constitution provides in pertinent part that "[n]o state shall ... deprive a person of life, liberty, or property, without due process of law." See U.S. Const. amend. XIV. The Second Circuit has held that for "a person to establish that the state has deprived him of property without due process, he must first identify a property right, second

show that the state has deprived him of that right, and third show that the deprivation was effected without due process." See Mehta v. Surles, 905 F.2d 595, 598 (2d Cir.1990) (citation omitted); Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Town of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994). The threshold inquiry in any due process claim is whether the plaintiff possessed a liberty or property interest in the subject matter at issue. See White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061-62 (2d Cir.) cert. denied, 510 U.S. 865 (1993) ("[T]o succeed on a claim of deprivation of procedural due process, plaintiff must establish that state action deprived him of a protected property or liberty interest.") (citing Mathews v. Eldridge, 424 U.S. 319, 332 (1976)). There is no dispute that plaintiffs have a property interest in their employment as investigators for the Sheriff's Department.

The next inquiry is whether the defendants have deprived plaintiffs of their rights to due process by threatening them with termination, filing disciplinary charges, refusing overtime opportunities, excessive scrutiny and surveillance as well as threatening plaintiffs' future careers. Property rights are not created by the Constitution. Rather, they are "'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]'" See Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). The Supreme Court has held that "'public employees who can be discharged only for cause have a

constitutionally protected property interest in their tenure and cannot be fired without due process[.]" See Ware v. City of Buffalo, 186 F.Supp.2d 324, 332 (W.D.N.Y. 2001) (citations omitted). The Court in Ware recognized that "while discharge from public employment qualifies as a loss of property interest and supports a section 1983 claim," "the Second Circuit has been hesitant to expand the definition of 'property' within the context of the Fourteenth Amendment." See Ware, 186 F.Supp.2d at 332-333. The law in this Circuit provides that nothing less than suspension without pay constitutes a protected property interest. See id.

Here, plaintiffs allege a property interest relating to conditions of employment including denial of overtime and unfavorable work assignments. However, these allegations do not constitute protected property interests within the meaning of the Due Process Clause. See Cassidy v. Scoppetta, 365 F.Supp.2d 283, 290 (E.D.N.Y. 2005) (overtime pay is not a protected property right); McNill v. New York City Dept. of Corrections, 950 F.Supp. 564, 572-573 (S.D.N.Y. 1996). The third inquiry is whether plaintiffs can show that the deprivation was effected without due process. With respect to plaintiffs allegations concerning defendants' campaign of harassment, conducting surveillance, threatening termination and filing disciplinary charge, plaintiffs are essentially claiming that defendants committed wrongful acts, but not that defendants failed to follow proper procedures. See McClary v. O'Hare, 786 F.2d 83, 87 (2d Cir. 1986) ("Appellant complains that state actors caused her

husband's death, not that in doing so they failed somehow to apply proper procedures. Procedural due process is simply not implicated in this case at all.") Accordingly, plaintiffs' allegations of surveillance, threats and harassment are not cognizable under the theory of procedural due process and thus, plaintiffs' procedural due process claims are dismissed.

**B.   Substantive Due Process**

Plaintiffs allege that their rights to substantive due process have been violated when the Sheriff used his authority and the personnel of the Sheriff's Department to spy on the plaintiffs and their families. Moreover, plaintiffs allege that the District Attorney used the personnel in his office to assist in accusing plaintiffs of misconduct in their jobs and in attempting to have them fired. Further, the complaint alleges that the individual defendants used the authority of their offices in order to harass plaintiffs.

To trigger the protection of the Due Process Clause, plaintiffs must show that defendants' conduct violated their constitutionally protected property interest. See U.S. Const. amend. XIV, §1; see also Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 625, 629 (2d Cir. 1996), Adler v. County of Nassau, 113 F.Supp.2d 423, 428 (E.D.N.Y. 2000). As with claims alleging procedural due process violations, the courts in this Circuit have held that nothing less than suspension without pay qualifies as a constitutionally protected property interest to support a claim for substantive due process violations. See Trivedi v. Thayer, 1998 WL 799181, at *6 (S.D.N.Y.

1998).

In the instant case, plaintiffs have not alleged a protected employment-related due process interest recognized under the law of this Circuit. They have not satisfied the critical element that they were terminated from employment or suspended without pay. Accordingly, plaintiffs' substantive and procedural due process claims must be dismissed. See Cassidy, 365 F.Supp.2d 283, 290 (E.D.N.Y. 2005) ("for the same reasons discussed in the analysis of Plaintiffs' procedural due process claim ... Plaintiffs failed to allege the deprivation of a constitutional right sufficient to invoke Fourteenth Amendment substantive due process protection.")

"[T]o state a substantive due process claim, a plaintiff must allege action by a governmental officer that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" See Bullock v. Gerould, 338 F.Supp.2d 446, 451 (W.D.N.Y.2004), quoting County of Sacramento v. Lewis, 523 U.S. 833, 848 n. 8 (1998). Such allegations are lacking in the instant case. See e.g. id. (collecting cases). Thus, plaintiffs' substantive Due Process Claims are dismissed.

**C. Equal Protection Claims**

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution "is essentially a direction that all persons similarly situated should be treated alike." See City of Cleburne v. Cleburne Living Ctr., Inc., 432 U.S. 432, 439 (1985). In Village of Willowbrook v. Olech, the United States Supreme Court

recognized the viability of an equal protection claim brought by a "class of one" where plaintiff alleges that he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. See 528 U.S. 562, 564 (2000); see also DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003). Such a claim "focuses on whether the official's conduct was rationally related to the accomplishment of the work of their agency." See Bizzarro v. Miranda, 394 F.3d 82, 88-89 (2d Cir. 2005).

To state a claim for a violation of their right to equal protection, plaintiffs must allege that, (1) "compared with others similarly situated, [plaintiffs were] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." See Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir.2004) (quoting Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir.1999)). "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement ...." See LaTrieste Restaurant v. Village of Port Chester, 188 F.3d 65, 70 (2d Cir.1999) (citing Zahra v. Town of Southold, 48 F.3d 674, 684 (2d Cir.1995).

Defendants argue that plaintiffs' equal protection claim should be dismissed because plaintiffs have failed to allege that they were "treated differently than any alleged comparators who are 'similarly

situated.'" See Seneca County Defs. Br. at 9.[1] Larson contends that the primary conduct plaintiffs allege that support their equal protection claim is not attributable to Larson, but rather is attributable to co-defendants. See Larson Reply. Br. at 2. The Court finds that plaintiffs have adequately stated a claim for denial of equal protection, at least at this stage of the proceedings. It is important to note that this is not a motion for summary judgment, but a motion to dismiss pursuant to Rule 12(b)(6). The issue is not whether plaintiffs ultimately will prevail but whether they are entitled to offer evidence to support their claims. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (reaffirming the simplified notice pleading requirement of Rule 8.

   Applying these standards to this case, the complaint can fairly be read on its face as alleging that the individual defendants singled out plaintiffs for unfavorable treatment without any rational justification in violation of the Equal Protection Clause. The complaint alleges that stricter (e.g. unequal) standards were applied to plaintiffs' performance compared to other investigators. Further, the allegations that Connolly, Larson and Swinehart including the Sheriff's Department and the SCDA's Office conducted surveillance or spied on plaintiffs and their families; were hypercritical and subjected plaintiffs to unusual scrutiny at work; denied and

---

[1] Defendants cite a Ninth circuit case entitled Engquist v. Oregon Dept. of Agriculture, 478 F.3d 985 (9th Cir. 2007) and argue that Olech "class-of-one" claims are inapplicable in the public employment context. See Seneca County Defs. Br. at 7. While persuasive, that holding is not controlling in this Circuit. In this regard, the Second Circuit has yet to review this issue. Accordingly, this Court will follow present Second Circuit case law as controlling.

attempted to deny plaintiffs' overtime opportunities; gave plaintiffs unfavorable work assignments and ostracized them; attempted to have plaintiffs disciplined and/or discharged; used the SCDA's Office to file false criminal charges against plaintiffs; and tried to destroy plaintiffs' reputations, can logically be understood to mean that the defendants treated plaintiffs differently from other criminal investigators in similar situations.

This conclusion finds support in DeMuria v. Hawkes, 328 F.3d 704 (2d Cir. 2003). The DeMuria court stated that "the Olech opinion does not establish a requirement that a plaintiff identify in her complaint actual instances where others have been treated differently for the purposes of equal protection," the Second Circuit held that the plaintiffs' "general allegation that Hawkes gave them a different standard of police protection than that typically afforded a resident of Clinton" was "sufficient, albeit barely, to meet the minimal level established by Olech for 'class of one' equal protection claims at the pleading stage." See DeMuria, 328 F.3d at 707. The same reasoning applies here. Plaintiffs have alleged, in general terms, that defendants have singled them out in defendants "campaign of harassment." I find those allegations sufficient to state a claim for denial of equal protection "at the pleading stage." See id.

**D.   Fourth Amendment Claim**

"The Fourth Amendment protects individuals from unreasonable searches conducted by the government, even when the government acts as an employer." See Leventhal v. Knapek, 266 F.3d 64, 72-73 (2d Cir,

2001) (quoting Nat'l Treasury Employees's Union v. Von Raab, 489 U.S. 656, 665 (1989)). The Supreme Court has stated that the Fourth Amendment protection against unreasonable searches is enforced by "a careful balancing of governmental and private interests." See New Jersey v. T.L.O., 469 U.S. 325, 341 (1995). The Second Circuit has further held that "[a] public employer's search of an area in which an employee had reasonable expectation of privacy is reasonable when 'the measures adopted are reasonably related to the objective of the search and not excessively intrusive in light of' its purpose." See Leventhal, 266 F.3d at 72 (quoting O'Connor v. Ortega, 480 U.S. 709, 726 (1997)). In addition, the special needs of public employers allows the government to dispense with the probable cause and warrant requirements when conducting workplace searches related to investigations of work-related conduct." See id. at 73.

Plaintiffs allege in paragraph 53 of their complaint that defendants "violated Plaintiffs' Fourth Amendment rights by engaging in illegal searches of their property and premises." See Complaint, ¶ 53. Plaintiffs argue that the complaint also alleges that the defendants conducted surveillance on plaintiffs and their families and that defendants engaged in unlawful searches of the plaintiffs' "property and premises." See id., ¶ 32. The Court finds that plaintiffs' allegations are conclusory and do not satisfy minimum pleading requirements. As the Second Circuit has "repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a

...
...
...

deprivation of rights, instead of a litany of general conclusions[.]" See Barr v. Abrams, 810 F.2d 358, 363 (2d Cir.1987); see also Dewick v. Village of Penn Yan, 972 F.Supp. 166, 169 (W.D.N.Y. 1997). "[A]llegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." See Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987) (citations omitted); see also Contractors Against Unfair Taxation Instituted on New Yorkers v. City of NY, 1994 WL 455553 *8 (S.D.N.Y. 1994) (Court found that Amended Complaint alleged no facts tending to demonstrate the unreasonableness of the alleged seizures).

Plaintiffs allege no facts to support their claims that defendants "violated Plaintiffs' Fourth Amendment rights by engaging in illegal searches of their property and premises." See Complaint ¶ 53. The allegations "'consist[] of nothing more than naked assertions, and set[] forth no facts upon which a court could find a violation of ... Civil Rights....'" See Daniels v. City of Binghamton, 947 F.Supp. 590, 596 (N.D.N.Y. 1996) (quoting Martin v. New York State Dept. of Mental Hygiene, 588 F.2d 371, 372 (2d Cir.1978) (per curiam )). Moreover, plaintiffs have failed to allege what property was allegedly searched, whether there was consent for the search, whether there was a warrant issued for the search, and whether plaintiffs had reasonable expectation of privacy relating to the property searched. Thus, plaintiffs' have failed to state a claim under the Fourth Amendment and their claim is dismissed.

### III. **Qualified Immunity**

The qualified immunity defense shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once the defendants claim the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendants are not entitled to qualified immunity. See Myers v. Potter, 422 F.3d 347, 352 (6th Cir.2005).

In determining whether qualified immunity applies, the court must first consider whether "the facts alleged show the [official's] conduct violated a constitutional right." See Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir.1994); Kerman v. City of New York, 374 F.3d 93, 108 (2d Cir.2004). If the plaintiff establishes that such a violation occurred, the court will examine "whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition." See Saucier, 533 U.S. at 201. A plaintiff may show that a right is "clearly established" by: (1) identifying analogous case law establishing the right; or (2) showing that the conduct was "so egregious" that no reasonable person could have "believed that it would not violate clearly established rights." See Hope v. Pelzer, 536 U.S. 730, 739 (2002); U.S. v. Lanier, 520 U.S. 259, 265 (1997).

Defendant Larson claims that he is entitled to qualified immunity since plaintiffs have not alleged any clearly established statutory or constitutional right violated by Larson under the factual allegations of this case. See Larson Br. at 5 and Reply Br. at 4. Plaintiffs counter that Larson's argument is based solely on his claim that the complaint does not state a cause of action for constitutional violations and Larson is entitled to qualified immunity as a matter of law. See Pl. Br. at 10. Plaintiffs contend that the issue of qualified immunity cannot be decided on a motion to dismiss. See id. Based on the factual allegations in the complaint, I find that it is premature to determine whether or not Larson is entitled as a matter of law to qualified immunity for his actions. Thus, I deny Larson's motion with respect to this claim, with out prejudice.

### IV.   Intentional Infliction of Emotional Distress Claims

Defendants Seneca County and the Sheriff's Department included in their original motion to dismiss, a request that the Court dismiss plaintiffs' claim for intentional infliction of emotional distress. However, in plaintiffs' opposition papers, they have conceded that their claims for intentional infliction of emotional distress cannot be brought against Seneca County and the Sheriff's Department. Thus, those claims are dismissed.

Plaintiffs have not addressed and/or opposed Larson's argument that the intentional infliction of emotional distress claim against him should be dismissed except to state that "the cause of action for

intentional infliction of emotional distress can only be brought against individual defendants." See Pls. Br. at 11. The Court finds that because the bar is set so high for plaintiffs to successfully plead facts sufficient to comprise intentional infliction of emotional distress, and plaintiffs have not overcome that legal barrier, motion to dismiss in favor of Larson is granted on the sixth cause of action. See Ortega v. New York City Off-Track Betting Corp., 1999 WL 342353 at *9 (S.D.N.Y.1999) ("New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." (citing Murphy v. American Home Products Corp., 58 N.Y .2d 293 (1983)).

Under New York Law, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) causal connection between the conduct and the injury; and (4) severe emotional distress. See Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121 (1993), Bender v. City of New York, 78 F.3d 787, 789 (2d Cir.1996); see also James v. DeGrandis, 138 F.Supp.2d 402, 421 (W.D.N.Y.2001), Nunez v. A-T Financial Information, Inc., 957 F.Supp. 438, 442 (S.D.N.Y.1997). Courts have relied on the outrageousness element to set reasonable bounds on this potentially limitless tort and have required that plaintiff allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See Murphy, 58 N.Y.2d at 303;

accord Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143 (1985).

The types of conduct that have been held to be sufficient to meet this high threshold have generally involved direct and constant sexual or other physical threats. See, e.g., Nunez, 957 F.Supp. at 441-43(New York Courts that have allowed claims of intentional infliction of emotional distress to proceed require that there be an "unrelenting campaign of day in, day out harassment or that the harassment was accompanied by physical threats"); Persaud v. Axelrod, 1996 WL 11197 at *1-4 (S.D.N.Y. 1996). Accordingly, I hold that Larson's conduct as alleged by plaintiffs do not rise to the level of outrageousness required by the case law. The behavior complained of does not rise to the level of atrocity that this claim requires. The conduct alleged here is that defendants, including Larson engaged in a "campaign of systematic harassment" with the intent to cause severe emotional distress. See Complaint ¶¶ 61-64. Applying the applicable law, these allegations are, on their face, insufficient to support a claim that Larson's acts were so outrageous as to be considered beyond all possible bounds of common decency. Thus, plaintiffs' claim for intentional infliction of emotional distress cannot survive a Rule 12(b)(6) motion to dismiss. See Riscili v. Gibson Guitar Corp., 2007 WL 2005555 at * 4-5 (S.D.N.Y. 2007).

## **CONCLUSION**

For the reasons set forth above, I grant in part and deny in part the defendants' motions to dismiss. The court therefore finds the following: (1) plaintiffs' Procedural Due Process claims are

dismissed; (2) plaintiffs' Substantive Due Process Claims are dismissed; (3) defendants' motion to dismiss plaintiffs' Equal Protection claims are denied; (4) plaintiffs' Fourth Amendment claims are dismissed; (5) Larson's motion with respect to the qualified immunity claim is denied, with out prejudice; and (6) plaintiffs' claims of Intentional Infliction of Emotional Distress are dismissed.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
       May 8, 2008